# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**845**

**CAF 12-00352**

PRESENT: SCUDDER, P.J., SMITH, CENTRA, SCONIERS, AND MARTOCHE, JJ.

---

IN THE MATTER OF AUSTIN M. AND ANNA M.
--------------------------------------------
OSWEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,       MEMORANDUM AND ORDER
PETITIONER-APPELLANT;

DALE M., RESPONDENT-RESPONDENT.

---

NELSON LAW FIRM, MEXICO (ALLISON J. NELSON OF COUNSEL), FOR
PETITIONER-APPELLANT.

THE FIX LAW FIRM, OSWEGO (ROBERT H. FIX OF COUNSEL), FOR
RESPONDENT-RESPONDENT.

GLORIA FLORES BALDWIN, ATTORNEY FOR THE CHILDREN, BALDWINSVILLE, FOR
AUSTIN M. AND ANNA M.

---

Appeal from an order of the Family Court, Oswego County (Kimberly
M. Seager, J.), entered February 3, 2012 in a proceeding pursuant to
Family Court Act article 10.  The order, insofar as appealed from,
denied that part of petitioner's application seeking to remove Anna M.
from the custody of respondent, granted respondent unsupervised
visitation with Austin M., and determined that petitioner did not make
reasonable efforts to prevent the need for removal of the children
from respondent's care but that the lack of such efforts was
appropriate under the circumstances.

It is hereby ORDERED that the order insofar as appealed from is
unanimously reversed on the law and the facts without costs, that part
of the application seeking removal of the child Anna M. is granted,
respondent is granted supervised visitation with the children, and the
matter is remitted to Family Court, Oswego County, for further
proceedings in accordance with the following Memorandum:  Petitioner
commenced this neglect proceeding against respondent father and sought
emergency removal of the children, Austin M. and Anna M.  Following a
hearing pursuant to Family Court Act § 1027, Family Court granted the
application with respect to Austin but not Anna, and granted the
father unsupervised visitation with Austin.  Petitioner appeals, and
we now reverse the order insofar as appealed from.

In a hearing held pursuant to Family Court Act § 1027 for the
temporary immediate removal of a child from a home, "if the court
finds that removal is necessary to avoid imminent risk to the child's
life or health, it shall remove or continue the removal of the child"
(§ 1027 [b] [i]).  The statute further provides that, "[i]n

determining whether removal or continuing the removal of a child is necessary to avoid imminent risk to the child's life or health, the court shall consider and determine in its order whether continuation in the child's home would be contrary to the best interests of the child" (§ 1027 [b] [ii]).  Thus, the court first must determine whether there is imminent risk to the child's life or health and, if there is, the court must then determine whether it is in the best interests of the child to be removed from the home or whether the risk to the child "can be mitigated by reasonable efforts to avoid removal" (*Nicholson v Scoppetta*, 3 NY3d 357, 378).  The court "must balance th[e] risk [of serious harm to the child] against the harm removal might bring, and it must determine factually which course is in the child's best interests" (*id.*).

Initially, we note that it appears that the court applied a best interests analysis only and did not first make a determination whether the children were at imminent risk of harm, as required by the statute.  The court removed Austin from the father's home upon determining that it was in Austin's best interests to allow the father time to engage in necessary anger management services.  Nevertheless, the record is sufficient to enable this Court to make our own findings, without the need for remittitur (*see generally Matter of Charity A.*, 38 AD3d 1276, 1276).  We agree with petitioner that there is a sound and substantial basis in the record for a determination that Austin was at imminent risk of harm (*see generally Matter of Thurston v Skellington*, 89 AD3d 1520, 1520).  The evidence at the hearing was overwhelming that the father slapped Austin in the face with an open hand with such significant force that the child had marks on his face the next morning.  The court's finding that it was not clear who caused the injury to Austin is not supported by the record.  The medical testimony established that an adult caused the injury to the child, and thus only the father or his girlfriend could have caused the injury inasmuch as they were the only two adults who were with the child during the relevant time period.  While Austin at first stated that his four-year-old sister hit him, he later stated that his father hit him and told Austin to say that his sister did it.  The father initially gave various explanations for the injury, then admitted that he could have inflicted the injury when he "blacked out," and eventually admitted that he did indeed slap the child.  The testimony at the hearing further established that the father often lost his temper with the children, particularly with Austin, and that Austin has had prior instances of bruising on him.  Indeed, a caseworker for petitioner has seen Austin cower in the father's presence when the father became angry, and he pleaded with the father not to hit him.  We therefore make the requisite determination that Austin was at imminent risk of harm (*see generally Nicholson*, 3 NY3d at 378) and, as noted, the court has made the requisite determination that it was in his best interests to be removed from the home.

With respect to the child Anna, petitioner alleged that Anna was derivatively neglected and also sought her removal.  It is well settled that a finding of derivative neglect is appropriate when a parent " 'demonstrate[s] a fundamental defect in [his or her]

understanding of the duties and obligations of parenthood and create[s] an atmosphere detrimental to the physical, mental and emotional well-being of [his or her children]' " (*Matter of Derrick C.*, 52 AD3d 1325, 1326, *lv denied* 11 NY3d 705; *see Matter of Darren HH.*, 68 AD3d 1197, 1197-1198, *lv denied* 14 NY3d 703).  We agree with petitioner that the record establishes that Anna was also at imminent risk of harm and that such risk could not be mitigated by reasonable efforts to avoid removal (*see Matter of Serenity S.*, 89 AD3d 737, 739; *Matter of Xavier J.*, 47 AD3d 815, 816).  While the evidence at the hearing did not establish that Anna, unlike Austin, sustained any bruising, "[t]he Family Court Act does not require actual injury as a condition precedent to a finding of imminent risk" (*Matter of Erick C.*, 220 AD2d 282, 283).

We further agree with petitioner that the court erred in allowing the father to have unsupervised visitation with Austin.  A parent should be granted "reasonable and regularly scheduled visitation unless the court finds that the child's life or health would be endangered thereby, but the court may order visitation under the supervision of an employee of a local social services department upon a finding that such supervised visitation is in the best interest[s] of the child" (Family Ct Act § 1030 [c]).  The determination whether visitation is appropriate is within the sound discretion of the court, and its findings should not be disturbed unless they lack a sound and substantial basis in the record (*see Matter of Vasquez v Barfield*, 81 AD3d 1398, 1398; *Matter of Hobb Y.*, 56 AD3d 998, 999).  Here, the court's determination granting the father unsupervised visitation with Austin lacks a sound and substantial basis in the record.  It is not in Austin's best interests to have unsupervised visitation with the father because the record establishes that the father is unable to care for the child in a safe manner and there exists the threat of future harm to Austin.  In light of our determination that both Austin and Anna were at imminent risk of harm in the father's supervision and care, we conclude that the father should have supervised visitation with the children.

We also agree with petitioner that the court erred in failing to find that it made reasonable efforts to maintain the children in the father's care, and in instead finding that reasonable efforts were not made, but that the lack of such efforts was appropriate under the circumstances.  Family Court Act § 1027 (b) (ii) provides in relevant part that, "[i]n determining whether removal or continuing the removal of a child is necessary to avoid imminent risk to the child's life or health, the court shall consider and determine in its order . . . whether reasonable efforts were made . . . to prevent or eliminate the need for removal of the child from the home . . . ."  In addition, "[i]f the court determines that reasonable efforts to prevent or eliminate the need for removal of the child from the home were not made but that the lack of such efforts was appropriate under the circumstances, the court shall include such a finding" (§ 1027 [b] [iii]).  Here, the court's determination that the lack of such efforts was appropriate under the circumstances was based on its conclusion that, although petitioner had not provided anger management counseling for the father, petitioner's lack of reasonable efforts to do so was

appropriate because anger management services were not identified as being necessary until just prior to removal of the children. That was error, inasmuch as the evidence at the hearing established that petitioner had in fact provided the father with numerous services, including services that addressed the father's discipline of the children. Indeed, the record establishes that, with respect to the issue of discipline, petitioner provided an intensive family coordinator who met with the father for seven hours a week and a preventative caseworker who met with him several times a month. Petitioner also scheduled a mental health evaluation for the father and provided him with financial assistance, transportation assistance, emergency food vouchers, and case work counseling. We therefore conclude that petitioner made reasonable efforts to prevent or eliminate the need for removal of the children from the home.

Finally, we agree with petitioner that the court erred in failing to issue an order of protection. At an emergency removal hearing, "the court may, for good cause shown, issue a preliminary order of protection" (Family Ct Act § 1027 [c]). At the conclusion of the evidence, petitioner requested an order of protection requiring the father not to use any corporal punishment, and we agree with petitioner that there was "good cause" for issuing an order of protection in this case (*id.*). We therefore remit the matter to Family Court for the issuance of such an order.

Entered: July 6, 2012                        Frances E. Cafarell
                                              Clerk of the Court